IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| **JACKSON R. HAWKINS,**<br><br>    Plaintiff,<br><br>v.<br><br>**TOWN OF HOLDEN,**<br>State of Maine,<br><br>**Lieutenant ANDREW D. WHITEHOUSE**, in his official and individual capacity as a Police Officer of the Town of Holden,<br><br>**Chief EDUARDO BENJAMIN**, in his official and individual capacity as Chief of Police of the Town of Holden,<br><br>    Defendants. | Case No. |

**FEDERAL COMPLAINT WITH JURY DEMAND**

NOW COMES Plaintiff Jackson R. Hawkins, by and through the undersigned attorneys of record, and for his cause of action against the above-named Defendants, alleges and shows claims for relief as follows:

    **I.**    **PRELIMINARY STATEMENT**

    1.    This is an action brought under 42 U.S.C. § 1983 and the laws of the State of Maine to hold the Town of Holden, *via* its policymaker, the Chief of Police of the Town of Holden Police Department and one of its officers accountable for their unreasonable, unlawful, and malicious violations of the Plaintiffs rights.

    2.    During the last several months, on four (4) separate dates, the Defendants have engaged in an ongoing course of illegal conduct that has involved the improper detention, arrest,

1

physical assault, and incarceration of the Plaintiff in violation of the Fourth Amendment to the Constitution of the United States of America.

## II. JURISDICTION

3. This claim is brought under the Civil Rights Act of 1871, 42 U.S.C §1983 and 42 U.S.C §1988. This Court has jurisdiction to hear this claim under 28 U.S.C. §§1331, 1343 (3) and (4). Jurisdiction over the state law claims is conferred by 28 U.S.C. §1367. Venue is proper in this District.

## III. THE PARTIES

4. Plaintiff, Jackson R. Hawkins (the "Plaintiff"), is a resident of Montgomery County, Kensington, Maryland.

5. Defendant Eduardo Benjamin is the Chief of Police of the Holden Police Department ("HPD"), Holden, Maine. At the time of the incident, and in his capacity as Chief of Police of the Holden Police Department, located in the State of Maine, Defendant Benjamin had responsibility for the oversight and operations of the Holden Police Department and is a "person" under §1983 and is being sued in his individual and official capacities. At all times relevant herein, Defendant Benjamin was employed by the Town of Holden, Maine and upon information and belief, was a resident of Penobscot County, Maine. At all times relevant herein, Defendant Benjamin was the Chief of Police for HPD and its "policymaker," as contemplated by the governing laws pertinent to this action.

6. Defendant Andrew D. Whitehouse is a law enforcement officer with the rank of Lieutenant, and was, at all times relevant to this action, an officer with the Holden Police Department, Holden, Maine, and is a "person" under 42 U.S.C. §1983 and is being sued in his individual and official capacities. At all times relevant herein, Defendant Whitehouse was

employed by the Town of Holden, Maine and upon information and belief, was a resident of Penobscot County, Maine.

7. At all times relevant herein, the acts and omissions of the Defendants were pursuant to the customs, policies, practices, and/or procedures of the Town of Holden, Maine *via* its law enforcement entity, the Holden Police Department, and its policymaker(s), including, but not limited to Defendant Benjamin and his senior officer (Lieutenant), Defendant Whitehouse.

8. At all times relevant herein, each Defendant acted under the color of the laws, statutes, and regulations of the State of Maine.

## IV.  FACTS

### Incident #1

9. On December 30, 2023, Jackson Hawkins was driving his motor vehicle through the Town of Holden, Maine on Route 1. Plaintiff observed Defendant Whitehouse on the side of the road as he passed by him. After the Plaintiff proceeded past, Defendant Whitehouse pulled out behind him and activated his police vehicle lights.  Upon observing the lights, the Plaintiff pulled over and turned off his vehicle.  The Plaintiff then removed his seatbelt so that he could reach over and remove his identity information from the glove compartment.

10. Defendant Whitehouse then approached the Plaintiff's vehicle and notified him that he was being stopped for, "following too closely." The Plaintiff respectfully disagreed with the Defendant's assertion. Defendant Whitehouse then indicated that he would also be writing and serving a citation on the Plaintiff for "failure to wear seatbelt." The Plaintiff then explained to Defendant Whitehouse that he removed his seatbelt in order to remove his personal information from the glove compartment. Defendant Whitehouse then stated, that since he did not see the Plaintiff remove the seatbelt, that he was going to give him a citation.

**Incident #2**

11. On March 16, 2024, at approximately 8 p.m., the Plaintiff Jackson Hawkins was driving on the Bangor Road in Holden, Maine towards the City of Bangor. While driving, he passed an unmarked police cruiser travelling in the opposite direction. After passing the Plaintiff, the police cruiser turned around and started following the Plaintiff's vehicle. Shortly thereafter, the Plaintiff reached his final destination and upon arriving, parked, and exited his vehicle. The unmarked vehicle, later determined to be operated by Defendant Whitehouse, pulled in behind the Plaintiff's vehicle. The individual, later identified as Defendant Whitehouse, partially exited his vehicle to where his person was unobservable due to his profile being blocked by the motor vehicle door.

12. The individual, later identified as Defendant Whitehouse, then screamed at the Plaintiff to STOP! Unaware that the individual yelling at him was a law enforcement officer, as the Defendant, Lieutenant Whitehouse, had failed to do so, the Plaintiff tried to walk away. Subsequently, Defendant Whitehouse continued to scream at the Plaintiff and eventually activated his police vehicle overhead lights. At that time, Defendant Whitehouse notified the Plaintiff that he was detaining him and ordered him to stop. Defendant Whitehouse then asserted that the Plaintiff's license plate lights were not functional. The Plaintiff immediately denied this claim. After the Plaintiff voiced his denial, Defendant Whitehouse ran at the Plaintiff, physically grabbed the Plaintiff, and then slammed him against the hood of the unmarked police cruiser. Subsequently, Defendant Whitehouse held the Plaintiff on the hood of the unmarked police cruiser, handcuffed him tightly, and then searched his person. Defendant Whitehouse then pulled the Plaintiff off the hood of the car and then proceeded to slam his head against the hood of the unmarked police cruiser while asserting that the Plaintiff was resisting arrest.

13. The Plaintiff was then arrested, transported, and booked for, "Resisting Arrest," and "No Valid Driver's License." Due to this incident, the Plaintiff was detained and incarcerated for over five hours in the Penobscot County Jail until he was bailed from custody.

14. During the course of the Bail Bondsman obtaining his bond release, the Bondsman questioned Defendant Whitehouse as to the nature of the charges against the Plaintiff. Specifically, the Bondsman questioned Defendant Whitehouse regarding the "No Valid Driver's License" charge that had been filed against the Plaintiff as the Bondsman found a valid Maryland Driver's License in the Plaintiffs possession. During this conversation between the Bondsman and Defendant Whitehouse, Defendant Whitehouse acknowledged that he was aware of the validity of the Plaintiff's driver's license and stated that, "He wanted to teach him a lesson."

15. The Plaintiff's vehicle was impounded after arrest and after the vehicle was retrieved from the impound lot, the Plaintiff created a date-stamped video demonstrating that his license plate lights were in perfect functioning condition. Furthermore, the Plaintiff's license plate lights were in working order and visible in the dashcam video from Defendant Whitehouse's unmarked police vehicle.

16. To date, the Plaintiff Jackson Hawkins has never been provided with a truthful basis for the traffic stop initiated by Defendant Whitehouse on March 16, 2024, and ultimately the Penobscot County District Attorneys' Office declined to move forward with any of the charges initiated by Defendant Whitehouse as a result of the stop, detention, arrest and incarceration of the Plaintiff.

**Incident #3**

17. On May 25, 2024, at approximately 6:35 p.m., the Plaintiff was driving west on Route 1 in Holden, Maine towards Bangor. At the same time, Chief Eduardo Benjamin was

driving east on Route 1 and passed the Plaintiff. As soon as the Plaintiff spotted Defendant Benjamin, he anticipated that he would be pulled over and detained. After passing and spotting the Plaintiff, Defendant Benjamin made a sudden U-turn, caught up with the Plaintiff, and executed a traffic stop. The Plaintiff remained in his vehicle and Defendant Benjamin approached the Plaintiff's vehicle while calling him by name. Defendant Benjamin then told the Plaintiff that the reason he made the traffic stop was because he spotted the Plaintiff using his phone while operating his motor vehicle. In fact, the Plaintiff had not been using his phone until he saw Defendant Bejamin execute the U-turn and begin to follow him in pursuit. Because of the previous incidents with the Holden Police Department, the Plaintiff feared for his safety and as a result activated his cellphone by calling his mother.

18.     After the stop, the Plaintiff told Defendant Benjamin that he had not been on his cellphone. Despite the explanation provided by the Plaintiff, Defendant Benjamin pulled the Plaintiff out of his vehicle, handcuffed, and placed the Plaintiff in his patrol car. The Plaintiff then asked Defendant Benjamin why he was under arrest. Defendant Benjamin told the Plaintiff that he was not under arrest, but that he had seen a weapon in the backseat of the Plaintiff's vehicle within his reach. Ultimately, the Plaintiff was released from custody and cited for three violations: using his cellphone, lack of vehicle registration, and failure to provide proof of insurance.

**Incident #4**

19.     On May 25, 2024, at 9:10 p.m., the Plaintiff was driving east on Route 1 in Holden, Maine while returning to his father's residence in Ellsworth, Maine. At that same time, Defendant's Whitehouse and Benjamin were travelling west on Route 1 and passed the Plaintiff. After passing the Plaintiff, the Defendants made an immediate U-turn, accelerated to a high

speed, and followed the Plaintiff's vehicle very closely until he reached the town line where he then broke off his pursuit of the Plaintiff.

### V. 42 U.S.C. § 1983 -- USE OF EXCESSIVE FORCE IN VIOLATION of 4th AMENDMENT OF THE UNITED STATES CONSTITUTION

20. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1-19, as expressly set forth herein.

21. Defendants Benjamin and Whitehouse, while acting under the color of law, violated Plaintiff Jackson Hawkin's constitutional rights by unreasonably detaining the Plaintiff, using excessive force against him, and setting into motion a series of events that led to the unlawful incarceration of the Plaintiff as described herein throughout, which resulted in the Plaintiff's suffering damages to include personal injury.

22. Defendants Benjamin and Whitehouse, because of their actions, violated the constitutional rights guaranteed to the Plaintiff by the Fourth Amendment of the United States Constitution.

23. The actions taken by Defendants Benjamin and Whitehouse were not taken in good faith, were intentionally malicious, and were in violation of clearly established state and federal law.

24. Defendants Benjamin and Whitehouse used excessive physical force against the Plaintiff during several incidents when they removed him from his motor vehicle as a result of unlawful, pretextual motor vehicle stops that were intended to harass and intimidate the Plaintiff.

25. As a direct and proximate result, the actions of Defendants Benjamin and Whitehouse, the Plaintiff suffered and continues to suffer substantial past and future damages, both compensatory and general, including but not limited to, medical bills, loss of income, severe emotional distress, mental anguish, embarrassment, humiliation, and physical pain and suffering.

26. Furthermore, because the actions of Defendants Benjamin and Whitehouse, and possibly other employees, agents, and/or representatives of the Holden Police Department, were motivated by evil intent and/or involved a reckless or callous indifference to the federally protected rights of the Plaintiff, an award of punitive damages is appropriate to the fullest extent permitted by law.

## VI. 42 U.S.C. § 1983 – *Monell* Liability

27. The Plaintiff repeats, re-avers, and realleges each and every allegation contained in paragraph 1-26 as if expressly set forth herein.

28. The Holden Police Department is the sole law enforcement agency for the Town of Holden, Penobscot County, Maine.

29. The Chief of Police of the Holden Police Department, Chief Eduardo Benjamin, is the "policymaker" with respect to the Holden Police Department, as a law enforcement agency. *See e.g., Revene v. Charles County Comm'rs*, 882 F. 2d 870, 874 (4th Cir. 1989).

30. Municipal liability can attach under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for even a single decision made by a final policymaker in certain circumstances, regardless of whether or not the action was taken once or repeatedly. *See Pembaur v. City of Cincinnati,* 475 U.S. 469, 481, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986). If an authorized policymaker approves a subordinate's decision and the basis for it, such ratification would be chargeable to the municipality under *Monell*. *See City of St. Louis v. Praprotnik,* 485 U.S. 112, 127 (1988).

31. Defendant Benjamin, as the Chief of Police and law enforcement policymaker for the Town of Holden, has a custom, pattern, practice, and/or procedure of hiring, tolerating, and

maintaining the continued employment of police officers who he knows have committed acts of violence and/or have a propensity to do so.

33. Further, when officers under his supervision would inevitably commit improper acts while working for the Holden Police Department, Defendant Benjamin would ratify their unconstitutional acts and assist in covering up the officer's bad actions by charging or assisting in charging members or allowing members of the community to be charged by subordinate officers, who fall victim to these officers, of various crimes or civil infractions.

33. In the instances cited above, no person or law enforcement officer was in imminent danger and no exigent circumstances existed that would excuse or justify the illegal conduct of Defendants Benjamin and Whitehouse.

34. Moreover, Defendant Benjamin was aware that civil rights violations, criminal acts, and other egregious misconduct had been conducted by officers under his employ and direct supervision, but no action was taken on his part.

35. All Defendants failed to meet their legally mandated duties by failing to properly train and supervise Law Enforcement Officers under their authority and control on the law, policies, and procedures regarding the proper legal basis for motor vehicle stops, detention, arrest, and incarceration of citizens.

36. Consistent with and as a result of the Holden Police Department's customs, patterns, practices and/or procedures, on multiple occasions the Plaintiff Jackson Hawkins was illegally stopped while operating his motor vehicle, illegally detained, physically assaulted, illegally arrested, illegally incarcerated, and subjected to numerous other forms of illegal and improper conduct, as described above, at the hands of the Defendants.

37. As a direct and proximate result of the Holden Police Department's customs, patterns, practices, and/or procedures, as stated herein above, the Plaintiff's rights guaranteed to him by the Fourth Amendment of the United States Constitution were violated.

38. As a direct and proximate result of the Defendants' unreasonable and unlawful actions, the Plaintiff has suffered and continues to suffer substantial past and future damages, both compensatory and general, including, but not limited to, medical bills, loss of income, severe emotional distress, mental anguish, embarrassment, humiliation, disfigurement, and physical pain and suffering.

39. Pursuant to *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978), the Town of Holden, Maine and the Holden Police Department, through its policymaker, Defendant Benjamin (and possibly other policymakers whose identities are not yet known) is liable for all harms and losses sustained by the Plaintiff, Jackson Hawkins.

WHEREFORE, the Plaintiff demands judgement against the Defendants plus punitive damages, attorney's fees, interest, costs and such other and further relief as this Court deems just and proper.

### VII.   NEGLIGENCE- Maine Tort Claims Act

40. Plaintiff repeats and realleges all preceding paragraphs 1-39 herein by reference.

41. All Defendants had a duty to protect and care for private citizens under their custody and control, including the Plaintiff Jackson Hawkins.

42. All Defendants breached and failed in their duty to protect and care for the Plaintiff.

43. Plaintiff suffered damages as a result of the Defendants' failures.

WHEREFORE, Plaintiff respectfully requests damages, costs, and such other relief as this Court deems just and proper.

## VIII. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

44. The Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-43, as if fully set forth herein.

45. By unlawfully removing the Plaintiff from his motor vehicle and viciously slammed his body and head against the hood multiple times, Defendant Whitehouse engaged in actions that were atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency.

46. Defendant Whitehouse acted with the intent to inflict emotional distress or acted recklessly when it was certain or substantially certain that emotional distress would result from his outrageous conduct.

47. Defendant Whitehouse's actions caused the Plaintiff to suffer severe emotional distress as he was being physically abused for no reason.

48. The emotional distress the Plaintiff experienced was so severe, no reasonable person could be expected to endure it.

49. As a direct and proximate result of the Defendants' unreasonable and unlawful actions, the Plaintiff has suffered and continues to suffer substantial past and future damages, both compensatory and general, including, but not limited to, medical bills, loss of income, severe emotional distress, mental anguish, embarrassment, humiliation, disfigurement, and physical pain and suffering.

50. The actions of Defendant Whitehouse against the Plaintiff were conducted with (a) actual malice and/or (b) a conscious, reckless, and outrageous indifference to the health,

safety, and welfare of others, thereby justifying an award of punitive damages to the fullest extent permitted by law.

WHEREFORE, Plaintiff respectfully requests damages, costs, and such other relief as this Court deems just and proper.

### IX.   BATTERY

51. The Plaintiff hereby incorporates by reference the allegations contained paragraphs, 1-50, as if fully set forth herein.

52. Defendant Whitehouse intentionally removed the Plaintiff from his motor vehicle, without lawful purpose or his consent.

53. Defendant Whitehouse then threw the Plaintiff to the hood of his motor vehicle and proceeded to slam his body and head into the hood of the vehicle, multiple times, until the Plaintiff was injured.

54. As a direct and proximate result of the Defendants' unreasonable and unlawful actions, the Plaintiff has suffered and continues to suffer substantial past and future damages, both compensatory and general, including, but not limited to, medical bills, loss of income, severe emotional distress, mental anguish, embarrassment, humiliation, disfigurement, and physical pain and suffering.

WHEREFORE, Plaintiff respectfully requests damages, costs, and such other relief as this Court deems just and proper.

### X.   VICARIOUS LIABILITY- 42 U.S.C. § 1983

55. Plaintiff repeats and realleges all preceding paragraphs herein by reference. Defendant Benjamin was at all times materially an authorized decisionmaker on behalf of the Town of Holden, Maine and the Holden Police Department.

56. All remaining Defendants were acting, at all times materially, under the direction or Policy established by Defendant Benjamin.

57. All Defendants actions, on behalf of the Town of Holden and the Holden Police Department, caused Plaintiff to suffer damages and harm.

58. All Defendants actions were done intentionally and deprived Plaintiff of his federally protected rights.

59. The Town of Holden, Maine and the Holden Police Department, through its authorized decisionmakers and/or its custom or Policy violated federal law and was the moving force behind all damages suffered by the Plaintiff.

WHEREFORE, Plaintiff respectfully requests the Court award him his damages, costs, attorney's fees, and grant such other relief as is just and proper.

## XI.     PUNITIVE DAMAGES

60. Plaintiff incorporates all preceding paragraphs herein by reference.

61. Upon information and belief, Defendants, including but not limited to Defendants Benjamin and Whitehouse have displayed indifference to the value and treatment of the citizens entrusted to their care, rising to the level of malice.

62. Defendants' conduct, including but not limited to Defendant Benjamin and Defendant Whitehouse, was motivated by ill will towards Plaintiff Jackson Hawkins.

63. In the alternative, Defendants engaged in deliberate conduct which, while motivated by something other than ill will toward Plaintiff, is so reprehensible that malice toward Plaintiff can be implied.

WHEREFORE, Plaintiff respectfully requests the Court award him punitive damages and grant such other relief as is just and proper.

## XII.     JURY DEMAND

Plaintiff demands a Jury on all matters triable to a jury in his Complaint.

### XIII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands that this Court:

A. Award Plaintiff compensatory damages in an amount to be shown at trial;

B. Award Plaintiff general damages in an amount to be shown at trial;

C. Award Plaintiff punitive damages in an amount to be shown at trial;

D. Award Plaintiff reasonable attorney's fees, costs and disbursements under 42 U.S.C. § 1988;

E. Pre and post judgment interest;

F. Grant Plaintiff such additional relief as the Court deems just and proper.

Dated in Augusta, Maine, on July 26, 2024.

Respectfully Submitted,

*/s/ Stephen C. Smith*
Stephen C. Smith, Esq., Bar No. 8720
Attorney for Plaintiff
STEVE SMITH Trial Lawyers
191 Water Street
Augusta, ME 04330
T (207) 622-3711
F (207) 707-1036
*Info@MaineTrialLaw.com*